**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JERVELL BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22-cv-6452 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| TROOPER G. WHITE, TROOPER K. | ) | |
| KROL, and UNKNOWN AND UNNAMED | ) | |
| ILLINOIS STATE TROOPERS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Trooper Geoffrey White arrested Plaintiff Jervell Barnes because he believed that a "hard substance" found in Mr. Barnes's backpack was crack cocaine. Mr. Barnes was booked, charged, and released on bail. However, the police drug lab determined that the hard substance contained no drugs at all. In fact, the "substance" was a pumice stone. The State of Illinois subsequently dropped all charges against Mr. Barnes, after which he initiated the present suit for wrongful arrest/detention and malicious prosecution under the Fourth Amendment. Before the Court today[1] is Defendants' motion for summary judgment on all counts. Because the Court believes that a reasonable jury could find that probable cause was so lacking as to defeat even the application of qualified immunity, the Court denies Defendants' motion for summary judgment.

**BACKGROUND**

**Rule 56.1 Statements**

Local Rule ("LR") 56.1(a)(2) requires a party moving for summary judgment to file a statement of material facts with citations to the record, attaching the cited evidence. LR 56.1(b)(2) requires the

---

[1] The Court apologizes for the extremely long pendency of this motion.

opposing party to file a response attaching "any cited evidentiary materials not attached" to the moving party's statement. The responding party must admit, dispute, or admit in part and dispute in part each asserted fact. LR 56.1(e)(2). To assert new facts, the nonmoving party may file a statement of additional material facts, attaching any cited evidentiary material not yet in the record. LR 56.1(b)(3).

"A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." Local Rule 56.1(e)(2). If the nonmoving party wishes to assert a new fact that is not responsive to the moving party's asserted facts, the party opposing summary judgment may file a statement of additional material facts. *See* Local Rule 56.1(b)(3). The moving party is permitted to submit a concise reply in the form prescribed by 56.1(b)(3)(B) to the non-moving party's statement of additional facts. Unless controverted by the opposing party's statement of facts, all material facts set forth in the moving or non-moving party's statement of facts will be deemed admitted. Fed. R. Civ. P. 56.1(a), (b)(3)(C).[2]

**Improper Objections**

Defendants argue that many of Mr. Barnes's objections should be stricken for failure to comply with LR 56.1, although they fail to indicate which elements of the objections offend. *See* dkt. 100 at *4 [hereinafter "Def. Reply"]. To the extent that the Court can parse the specifics of Defendants' argument, it appears that they claim that Mr. Barnes has failed to cite record evidence disproving the following: (1) Trooper White found cannabis inside Mr. Barnes's car; (2) Trooper White smelled burnt cannabis in Mr. Barnes's car; (3) Trooper White observed that Mr. Barnes's eyes were

---

[2] In their reply brief, Defendants include five new exhibits which were not previously attached to their statement of facts or otherwise part of the summary judgment record. *See* exs. 14–18. As a general matter, "Parties moving for summary judgment are… forbidden from raising new arguments and asserting additional facts on reply." *Maher v. Rowen Grp., Inc.*, No. 12 C 7169, 2015 WL 273315, at *8 (N.D. Ill. Jan. 20, 2015) (collecting cases). Defendants did not seek leave from the Court before filing these new exhibits, and Defendant's reply brief does advance any argument for why the evidence should be considered. The Court finds that consideration of exhibits 14–18 would unfairly prejudice Mr. Barnes, who has not had the opportunity to respond to that evidence. Exhibits 14–18 are therefore excluded.

bloodshot and glossy; and (4) Trooper White had nothing more to do with Mr. Barnes's case after he signed the criminal complaint and committing Mr. Barnes to the custody of the Chicago Police Department ("CPD").

With respect to the first and second asserted facts, Mr. Barnes cites to his deposition statements that there was no cannabis inside his car. Dkt. 88 ¶¶ 9, 11; *see* ex. 7, 26: 20–21, 29:22–30:1.[3] That establishes a dispute as to whether Trooper White found cannabis inside the car and as to whether Trooper White smelled raw cannabis in the car. However, it is possible that Trooper White could have legitimately smelled *burnt* cannabis coming from Mr. Barnes's car, even if there was no cannabis in the vehicle, and even if Mr. Barnes did nothing illegal under Illinois law. Therefore, Mr. Barnes has failed to establish a dispute as to whether Trooper White smelled *burnt* cannabis, and that fact will be deemed admitted.

With respect to whether Mr. Barnes's eyes were bloodshot and glossy, and whether Trooper White took any action with respect to Mr. Barnes's case after committing him to CPD custody and signing the criminal complaint, the Court agrees with Defendants. Their claims are properly supported with citations to record evidence. *See* ex. 8, 13:17–21, 60:4–7. Mr. Barnes cites to no record evidence rebutting these claims. Both facts are therefore deemed admitted.

Defendants have also asserted that Troopers White and Krol were not involved in Mr. Barnes's prosecution, DSOF ¶¶ 27, 35, and that Mr. Barnes's objections to these assertions include a legal argument in violation of LR 56.1(e)(2). But Defendants' assertions also rely on a legal argument (i.e., what counts as "prosecution"). As such, neither will be admitted as a matter of fact. The Court will consider the legal question of Trooper Krol's involvement below. *See* section IV.

---

[3] For ease of reference, all numbered exhibits cited in this motion refer to exhibits filed by Defendants. They attached exhibits 1–13 to their statement of facts, dkt. 80, and and attached exhibits 14–18 to their motion reply brief, dkt. 100. The lettered exhibits (*i.e.*, exhibit A, exhibit B) are from Mr. Barnes, who attached them to his statement of additional facts, dkt. 89. Mr. Barnes also submitted a declaration with his statement of additional facts, which will be cited as "Pl. Decl."

**Factual Allegations**

The following facts, deemed admitted from the parties' Rule 56.1 Statements, are undisputed unless otherwise noted.[4] For clarity as to the timeline, the Court includes below some disputed facts, which will be clearly designated as such.

On September 20, 2021, Plaintiff Jervell Barnes and his friend, Danielle Foster, suffered a tire blowout while driving on I-90. He pulled his car over to the rightmost lane of traffic. Some time later, with Mr. Barnes's car still parked in the rightmost lane, Defendant Trooper Geoffrey White of the Illinois State Police arrived on scene, parked his squad car behind Mr. Barnes's vehicle, and noted the flat tire on Mr. Barnes's car. He also claims to have observed cardboard covering the license plate, although Mr. Barnes disputes that any such covering existed. Trooper White asked Mr. Barnes to either move his car or have it towed. Mr. Barnes moved his car to the shoulder of the road, and Trooper White did the same. At this point, Trooper White smelled burnt cannabis either in Mr. Barnes's car, or somewhere in the vicinity, and he observed that Mr. Barnes's eyes were bloodshot and glassy. Trooper White also claims to have smelled "raw cannabis"; Mr. Barnes claims that no such smell existed or could have existed. Finally, Trooper White claims that when he asked Mr. Barnes about the smell, Mr. Barnes admitted that he had been smoking marijuana in the car earlier; Mr. Barnes denies that he made any such admission. Regardless, Trooper White asked Mr. Barnes and Ms. Foster to exit the vehicle and then proceeded to search it. At some point, another officer, Trooper Corey Schlau, stopped at the scene to offer assistance.[5]

Trooper White found a backpack in the car that belonged to Mr. Barnes. Inside the backpack Trooper White uncovered a "hard substance," which he claims to have suspected was a rock of crack

---

[4] *See generally* dkt. 80 (Defendant Statement of Facts) [hereinafter "DSOF"]; dkt. 89 (Plaintiff's Statement of Additional Facts) [hereinafter "PSOF"].

[5] Trooper Schlau is not a defendant.

– 4 –

cocaine. Trooper White did not have the necessary equipment to conduct a field test of the substance. Plaintiff did not identify the substance at the time, but he later denied it was crack cocaine and identified it as a pumice stone.[6] Trooper White also claims to have found a mason jar containing cannabis in Mr. Barnes's backpack, and that he that he found a second backpack, belonging to Ms. Foster, which contained an open bottle of alcohol. Mr. Barnes claims that there was only one backpack in the car, which contained neither alcohol nor cannabis.

After concluding his search, Trooper White put the pumice stone back into the backpack, placed the backpack on the ground near the rear of Mr. Barnes's car. He then reached out to Defendant Trooper Kevin Krol and asked him to bring his K-9 drug detection dog, Hades, to the scene. Trooper White testified that he moved the pumice stone and backpack in this manner because it would allow the drug dog to determine if there were any other narcotics outside the backpack. After they arrived, Trooper Krol and Hades conducted a sniff search, the exact parameters of which are disputed. Trooper White was supervising traffic during the search, and he did not himself see Hades's actions. What is undisputed is that Trooper Krol led Hades around the car, put Hades back into his squad car, and then informed Trooper White that the dog had detected narcotics in the backpack.

Trooper White and possibly Trooper Krol then handcuffed Mr. Barnes and placed him in Trooper White's squad car. Trooper White charged Mr. Barnes with felony possession of crack cocaine, took him to a Chicago Police Department station, and released him into CPD custody. While he was in custody, Mr. Barnes appeared before a judge who made a finding of probable cause. He was released on a recognizance bond the next day, after having been held in custody for a little more than 48 hours.

Meanwhile, Trooper White filled out the criminal complaint against Mr. Barnes. Because Trooper White was new to the job, he was unfamiliar with the process, and he asked Trooper Krol

---

[6] Defendants do not contest that the substance was, in fact, a pumice stone. *See* dkt. 99 ¶ 13.

for assistance. Trooper Krol provided him templates that Trooper Krol used when arresting someone for narcotics. Trooper White also submitted for drug testing 23.3 grams of suspected crack cocaine from the pumice stone and 2.9 grams of suspected cannabis from the mason jar that he claims to have found in Mr. Barnes's backpack. On September 30, 2021, the test results came back positive for 0.8 grams of cannabis from the sample of suspected cannabis, and no drugs at all from the pumice stone. On November 17, 2021, the Cook County State's Attorney's Office dismissed all charges.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and… draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

## DISCUSSION

Mr. Barnes has sued Defendants under 42 U.S.C. § 1983, alleging that he was wrongfully arrested/detained and that he was a victim of malicious prosecution, both in violation of the Fourth Amendment.[7] Defendants have moved for summary judgment on both counts. In general, they argue

---

[7] There appears to have been some confusion about whether Mr. Barnes brought any claims under Illinois law. *see, e.g.*, Def. Br. *11. However, Mr. Barnes has clarified that he only brings federal claims under § 1983. Pl. Resp. *1.

that both causes of action are defeated by the existence of probable cause to arrest Mr. Barnes; and also that the officers are entitled to qualified immunity even if probable cause did not exist. Additionally, Defendants argue that, even if summary judgment is not warranted for Trooper White, it should still be granted for Trooper Krol because of his allegedly minimal involvement in Mr. Barnes's case. The Court will address each cause of action in turn, followed by analyses of Trooper Krol's involvement and qualified immunity.

As seen above, the parties disagree on many of the basic facts of the encounter between Mr. Barnes and Defendants. Mr. Barnes relies heavily on his deposition testimony, which Defendants attack as "self-serving." Dkt. 100 at *12. Plaintiff is required to cite to specific record evidence in his 56.1 filings, but if Defendants are insinuating that Mr. Barnes's deposition testimony does not constitute legitimate record evidence, then Defendants are sorely mistaken. The Seventh Circuit "long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (citing *Payne v. Pauley*, 337 F.3d 767, 770–73 (7th Cir. 2003)). It is true that Mr. Barnes cannot create a factual dispute by speculating as to things of which he has no knowledge. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)); *see also Anderson*, 477 U.S. at 248. But to the extent that his testimony is "based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts." *Berry*, 618 F.3d at 691. This rule is necessary because "It is not for courts at summary judgment to weigh evidence or determine the credibility of… testimony; we leave those tasks to factfinders." *Id.*

## I.    Wrongful Detention/Arrest

Section 1983 authorizes suits against police officers who violate constitutional rights while acting under color of state law. *See* 42 U.S.C. § 1983. Mr. Barnes may recover damages for Fourth

Amendment violations if his arrest and ensuing detention lacked probable cause. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Accordingly, the existence of probable cause would defeat Mr. Barnes's claim. *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024).

Probable cause is a "common-sense inquiry requiring only a probability of criminal activity"; probable cause exists "whenever an officer… has enough information to warrant a prudent person to believe criminal conduct has occurred." *Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016) (quoting *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010)). Because probable cause deals with probabilities and depends on the totality of the circumstances, *Maryland v. Pringle*, 540 U.S. 366 (2003), "[i]t requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018). Officers making probable-cause determinations "are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). As such, the operative question here is: when equipped with the information available to Troopers White and Krol, could a reasonable officer have believed that criminal conduct occurred?

Critically, if probable cause to arrest existed for *any* offense, "even a very minor criminal offense," then Mr. Barnes's arrest would not offend the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Thus, to defeat summary judgment, Mr. Barnes must show not only that a genuine dispute exists as to whether Troopers White and Krol had probable cause to arrest Mr. Barnes for possession of crack cocaine (the only charged behavior); he must also show that there is a genuine dispute as to probable cause for all offenses for which Defendants have argued Troopers White and Krol might have arrested him. *Duncan v. Fapso*, 216 F. App'x 588, 590 (7th Cir. 2007) (officer need not announce all the reasons why a suspect is being arrested); *Williams v. Rodriguez*, 509 F.3d 392, 399-401 (7th Cir. 2007) (facts known to the officer established probable cause for a traffic violation, even though the officer's given reason for the arrest was different). That is a significant lift.

Defendants have taken a kitchen sink approach, arguing that probable cause existed to arrest Mr. Barnes for six different offenses: (1) stopping his car in a highway traffic lane; (2) driving with his license plates covered; (3) using cannabis in a motor vehicle on a highway; (4) transporting cannabis without using a proper container; (5) transporting an open bottle of alcohol; and (6) possession of crack cocaine. Def. Br. *7–8. The Court observes at the outset that Trooper White only charged Mr. Barnes with possession of crack cocaine, and he did not mention in the arrest record any facts related to most of the offenses listed above. Ex. 2; *see also* ex. 4. Defendants' legal strategy raises a suspicion that they are attempting to salvage a difficult case by scouring the Illinois code for potential additional violations, no matter whether any reasonable police officer would ever have actually arrested Mr. Barnes for any of the host of misdemeanors identified. Nevertheless, Defendants are correct that probable cause as to *any* crime will defeat Mr. Barnes's claim. *Atwater*, 532 U.S. at 354; *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018). The Court will therefore address each potential violation in turn.

### A.    Stopping in a Highway Traffic Lane

The Illinois Vehicle Code makes it illegal for any person to "Stop, stand or park a vehicle… On any controlled-access highway." 625 ILCS 5/11-1303(a)(1)(j). Here, it is undisputed that Mr. Barnes's car was stopped in the rightmost lane of I-90 when Trooper White approached the car. Dkt. 88 ¶ 8. However, Mr. Barnes argues that probable cause did not exist for this offense because he had a flat tire and it was not safe to move the car. Pl. Resp. *6–7. Under the statute, stopping in a traffic lane is not illegal if done because it was "necessary to avoid conflict with other traffic." 625 ILCS 5/11-1303(a). Mr. Barnes argues that moving his car would have required him to "conflict with traffic."[8] Pl. Resp. *7; *see also* Pl. Decl. ¶ 2. Defendants reply that this constitutes an affirmative defense

---

[8] Mr. Barnes's conduct may also have been justified under the general necessity defense in Illinois law, which is available when "(1) the defendant was without blame for the situation; and (2) the defendant reasonably believed

that may defeat criminal liability but has no bearing on whether probable cause existed for an arrest. Def. Reply *12 (citing *Beiles v. City of Chi.*, 987 F. Supp. 2d 830, 836 (N.D. Ill. 2013); *Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998)).

Defendants are correct that the statute's necessity exception carries the hallmarks of an affirmative defense. *See United States v. Petty*, 132 F.3d 373, 378 (7th Cir. 1997) ("An affirmative defense goes beyond the elements of the offense to prove facts which somehow remove the defendant from the statutory threat of criminal liability.") However, Defendants are mistaken on the broader point; affirmative defenses *can* defeat summary judgment if a reasonable officer in the arresting officer's place would have known about it. *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1028 (N.D. Ind. 2014) (collecting cases across multiple circuits). Police officers need not actively investigate a potential affirmative defense once probable cause has been otherwise established, but they also "may not ignore conclusively established evidence of the existence of an affirmative defense." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004).

Here, both parties agree that Trooper White was aware that Mr. Barnes had a flat tire. DSOF ¶ 8; PSOF ¶ 4. Thus, a reasonable officer in Trooper White's place would have known of at least some facts supporting either the statute's affirmative defense or the general necessity defense. The record is unclear about the extent to which it really may have been unsafe for Mr. Barnes to move his car, absent police officers being present to ensure everybody's safety. Based on the record before it, the Court finds a genuine dispute as to the question of whether Mr. Barnes's affirmative defense would have been conclusively established for a reasonable officer in Trooper White's place. By extension, there is therefore a genuine dispute as to whether probable cause existed to arrest Mr. Barnes for stopping his vehicle in a traffic lane.

---

that his conduct was necessary to avoid a greater injury than the one that might reasonably have resulted from his otherwise illegal conduct." *People v. Dick*, 2019 IL App (2d) 170391-U, ¶ 21; *see* 720 ILCS 5/7-13.

B.    *Covered License Plates*

Illinois law also requires drivers to ensure that their license plates are in "a place and position to be clearly visible" and that they "shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate." 625 ILCS 5/3-413(b). Defendants claim that, upon Trooper White's arrival at the scene, he noticed that Mr. Barnes's license plates were covered up with cardboard. DSOF ¶ 8. If true, that would provide probable cause to arrest Mr. Barnes for violating 625 ILCS 5/3-413(b). However, Mr. Barnes disputes that his license plates were covered. In his deposition, Mr. Barnes stated that he has never driven with his front and rear license plates covered up. Ex. 7 at 22:17–22. Additionally, the cardboard does not appear in any of the police reports. *See* ex. 2, ex. 4. The Court rules that there is a genuine dispute as to whether Mr. Barnes's license plate was covered by cardboard. As such, there is also a genuine dispute as to whether probable cause existed to arrest Mr. Barnes for covering up his license plates.[9]

C.    *Using Cannabis in a Motor Vehicle on a Highway*

Although cannabis is illegal under federal law, it is legal under Illinois law for recreational use, subject to certain limitations. Among those limitations is 625 ILCS 5/11-502.15(a), which states that "No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State." Defendants argue that probable cause existed to arrest Mr. Barnes for this Class A misdemeanor because he admitted to Trooper White that he had smoked in his car. Def. Br. *8; *see* DSOF ¶ 4. However, Mr. Barnes submitted a sworn affidavit denying that he ever made such an admission. Pl. Decl. ¶ 4; PSOF ¶ 7. Mr. Barnes also testified at his deposition that he never had

---

[9] In their reply brief, Defendants claim that their newly submitted dashcam footage indisputably shows that Mr. Barnes's rear license plate was covered. Def. Reply *12; ex. 15. However, as noted above, the Court has excluded Defendants' additional dashcam footage from consideration. Moreover, the Court disagrees that footage indisputably shows that Mr. Barnes's license plate was covered. The video is low resolution and it is dark outside. The Court cannot determine based on the visual evidence whether the license plate was covered.

– 11 –

cannabis in the car, ex. 7 at 28:18–21, 29:22–30:1, 44:4–8; *see* dkt. 88 ¶ 9, and it is undisputed that no burnt cannabis was ever found in Mr. Barnes's car. Dkt. 99 ¶ 6; *see* ex. 8 at 52:21–23. Moreover, even if Mr. Barnes did admit to smoking in the car at *some* point, the statute only makes it a crime to smoke in a car "*upon a highway.*" 625 ILCS 5/11-502.15(a) (emphasis added). Given that there is no evidence of burnt cannabis in the car, and given that the record does not contain any evidence of a sobriety test, the Court believes that a reasonable jury could find that no probable cause existed to arrest Mr. Barnes for smoking inside his car on a highway.[10]

### D. Illegally Transporting Open Alcohol or Cannabis

The same law that makes it illegal to smoke cannabis in a car on a highway also criminalizes a driver possessing cannabis anywhere in a car unless the cannabis is "in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." 625 ILCS 5/11-502.15(b). Additionally, it is illegal in Illinois for a driver to transport "any alcoholic liquor within the passenger area" of a car if it is not "in the original container and with the seal unbroken." *Id.* § 5/11-502(a).

Both parties agree that Trooper White found a black backpack inside Mr. Barnes's car, that this backpack contained a "hard substance," later identified as a pumice stone, and that Trooper White claims to have believed that this "hard substance" was crack cocaine. DSOF ¶ 15; PSOF ¶ 11.[11] However, Trooper White also claims to have found a second backpack in the car, allegedly belonging to Ms. Foster, which contained an open bottle of alcohol. Ex. 8 at 20:17–24, 21:1–8; ex. 11 ¶ 6.

---

[10] Although Mr. Barnes does not advance the argument, the Court also observes that even the deposition testimony that Defendants rely on in their statement of facts does not establish whether Mr. Barnes smoked in his car. Ex. 8 at 18:14–19 ("Q: When you asked Barnes about the smell of cannabis, what did he say? A: His response was he did smoke but earlier. Q: Did he say he smoked in the vehicle or outside the vehicle? A: He didn't—He didn't say, sir.")

[11] In his response to Defendants' statement of facts, Mr. Barnes disputes that Trooper White found a "hard substance" inside the backpack. Dkt. 88 ¶ 15. However, in his own statement of additional facts, Mr. Barnes asserts that Trooper White found a pumice stone inside the backpack. PSOF ¶ 11. Since there does not appear to be any dispute that the "hard substance" was actually a pumice stone, the Court rules that there is no genuine dispute as to whether Trooper White found a "hard substance" in Mr. Barnes's backpack.

Trooper White also claims to have found a mason jar of cannabis inside Mr. Barnes's backpack. Ex. 8 at 22:5–10. If true, these facts would be sufficient to establish probable cause for violating 625 ILCS 5/11-502(a) and 5/11-502.15(b).

But Mr. Barnes disputes both violations. PSOF ¶ 10. Defendants do not refute Mr. Barnes's argument that a genuine dispute exists as to the presence of the alcohol, so the Court will accordingly find that a genuine dispute exists on that point. With respect to the mason jar of cannabis, Defendants argue that Mr. Barnes's denial of the cannabis in his backpack should not be accepted because Trooper White's deposition testimony is corroborated by the undisputed fact that Trooper White submitted a jar of cannabis to the drug lab for testing at the same time that he submitted the pumice stone. Def. Reply *13. They also make a surprising claim that Mr. Barnes cannot dispute the drug lab evidence because he "willingly accepts" it as evidence that the "hard substance" was not crack cocaine. *Id.* at *7. However, Defendants seem to misconstrue Mr. Barnes's denial. He has stated that he does not dispute that Trooper White submitted a mason jar of cannabis to the drug lab. Dkt. 88 ¶ 28. Rather, what Mr. Barnes disputes is "that any cannabis came from his car." *Id.* At the summary judgment stage, the Court does not accept, or reject, narratives. Rather, the Court assesses whether the evidence is such that a reasonable jury could rule either way. Here, Mr. Barnes has testified that there was only one backpack in his car, and that it did not contain alcohol or cannabis. That may seem unlikely, given Trooper White's submission of cannabis to the drug lab, but it is not beyond plausibility that a reasonable jury could find Mr. Barnes's account more credible than Trooper White's. The Court therefore finds that there are genuine disputes as to whether Trooper White found an open bottle of alcohol or a mason jar of cannabis inside Mr. Barnes's car.

### E.   *Possession of Crack Cocaine (or Other Narcotics)*

Finally, we arrive at the only crime with which Mr. Barnes was actually charged: possession of crack cocaine, in violation of 720 ILCS 570/401(a)(2)(A). Defendants argue that Trooper White

– 13 –

reasonably believed that the pumice stone he found in Mr. Barnes's backpack was crack cocaine, which alone established probable cause. Defendants also argue that probable cause was further corroborated by Hades's detection of an odor of narcotics inside the backpack. Def. Br. *8–9. However, they insist that probable cause would have existed even without Hades's detection. Def. Reply *7.

### 1.    The Pumice Stone

With respect to the reasonableness of Trooper White's belief that Mr. Barnes's pumice stone was a rock of crack cocaine, the Court frankly finds the argument ridiculous. Mr. Barnes asserts, correctly, that "A pumice stone is exceptionally distinct in appearance, weight, and texture from crack cocaine." PSOF ¶ 11. He describes a pumice stone as "porous, light-weighted, grey-colored stone that has a sponge-like appearance and is shaped like an oval." Pl. Resp. *11; *see* PSOF ¶ 11. Defendants quibble with some of this description, *see* dkt. 99 ¶ 11, but it certainly describes the object that Trooper White found in Mr. Barnes's backpack, *see* ex. A. In contrast, according to Mr. Barnes's description, "Crack cocaine is typically in the form of small rocks that have a white, crystal-like appearance. Crack is not porous like a pumice stone. Crack is not grey like a pumice stone. Crack does not have a sponge-like appearance like a pumice stone. Crack does not take the shape of a perfect oval, like a store-bought pumice stone." Pl. Resp. *11.

Defendants contend that Mr. Barnes's argument here must be discounted, because he does not cite to any authority as to the appearance of crack, nor does he possess any expertise in identifying drugs. Def. Reply *14–15; *see* dkt. 99 ¶ 11. However, Defendants also concede that Trooper White was not a drug-identification expert. Def. Reply *20. He had only been on the job for six months at the time of Mr. Barnes's arrest, *id.*, and he did not testify to having been trained in identifying crack cocaine, *see* ex. 8 at 25:19–26:20. In other words, Trooper White was no more qualified to identify the substance as crack than Mr. Barnes. The Supreme Court of Illinois has also long held that "police officers may not be presumed to possess the requisite expertise to identify a narcotic substance." *People*

*v. Park*, 72 Ill. 2d 203, 211 (1978) (citing *People v. Sanford*, 24 Ill.2d 365, (1962)). Additionally, Trooper White testified that he did not show the object to Trooper Schlau, ex. 8 at 32:9–33:8; nor did Trooper White get confirmation of his suspicions from Trooper Krol—a trained narcotics officer with significantly more experience than Trooper White, ex. 9 at 7:2–18, 9:3–17.[12] Finally, Defendants repeatedly fault Mr. Barnes for not identifying the "hard substance" as a pumice stone for Trooper White. *See, e.g.*, Def. Reply *15. But the Seventh Circuit has held that "a suspect's mere refusal to answer an officer's questions" does not even "create reasonable suspicion," much less probable cause. *United States v. Howell*, 958 F.3d 589, 600 (7th Cir. 2020); *see Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("[A]ny refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").

In sum, this collection of evidence does not suffice for probable cause. Indeed, even before Mr. Barnes made any response to the summary judgment motion, Defendants had already failed to submit evidence establishing that Trooper White was reasonable in believing that a mysterious hard substance he found in Mr. Barnes's backpack was crack cocaine. Mr. Barnes's statement of additional facts and his response brief serve to lay the issue to rest. But the Court will go further. Since neither party has cited to any expert opinions as to the appearance of crack cocaine, the Court will take judicial notice of two descriptions in authoritative government sources. First, the U.S. Sentencing Guidelines describe crack as "usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c), Note D. Second, the United States Sentencing Commission has described crack as follows:

> After the solid substance [produced by boiling powder cocaine with baking soda] is dried, the [resulting] crack cocaine is broken into "rocks," each representing a single dosage typically weighing from one-tenth to one-half of a gram… With respect to doses…one gram of crack cocaine yields two to ten doses.

---

[12] Defendants also affirmatively state that Trooper Krol has "expertise in narcotics detection." Def. Br. *10.

United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 63 (May 2007). These descriptions generally accord with the description of crack given by Mr. Barnes in his response brief, Pl. Resp. *11, and they do not particularly describe the porous, perfectly oval-shaped object photographed in exhibit A, which consists of one very large piece and one small piece, rather than multiple small and jaggedly broken rocks. The Court therefore finds a genuine dispute as to whether Trooper White's discovery of the pumice stone, on its own, established probable cause.

### 2. The Drug Dog Search

It is a somewhat closer question as to whether probable cause to arrest Mr. Barnes existed following Hades's alleged detection of narcotics in Mr. Barnes' backpack. However, the Court ultimately finds that there is a genuine dispute of material fact as to whether Hades made any such detection; accordingly, the alleged detection cannot support summary judgment.

Both parties agree that after Trooper Krol arrived, he led Hades around Mr. Barnes's car and over to his backpack, DSOF ¶ 18, which at this point had been placed on the ground at the rear of the car, PSOF ¶ 13. Both parties agree that Hades typically signals that he has detected narcotics by giving a sit and stare response or a down and stare response, dkt. 99 ¶ 15, and that the dog was not trained to respond to the smell of cannabis, dkt. 88 ¶ 19. Also undisputed is that Trooper White did not observe the narcotics search. Dkt. 99 ¶ 16. However, the parties disagree about what happened during the search and Hades's alleged stop or alert. Defendants argue that Mr. Barnes cannot meaningfully contest Trooper Krol's testimony about the narcotics search because he is not an expert qualified to testify about drug dog reactions. Def. Reply *7–9; *see also* dkt. 81 at *10 [hereinafter "Def. Br."]. With respect to Mr. Barnes's expertise, it is true that he is not an expert in narcotics detection, and he does not claim otherwise. Dkt. 87 at *12 [hereinafter "Pl. Resp."]. But Trooper Krol testified that when Hades came near the bag, he "pawed at it a few times, laid down, and stared." Ex. 9 at 20:9–

11. Mr. Barnes does not need an expert to determine whether Hades gave the reported response, he only needs to be able to testify to his own observations. *See Miles v. Troglia et al.*, No. 2:20-cv-02015-CSB-EIL, at *31 (C.D. Ill. Aug. 8, 2022) (submitted by Mr. Barnes as ex. B); *see also Patterson v. Baker*, 990 F.3d 1082, 1083-86 (7th Cir. 2021) (a non-expert can testify as to his or her observations). At that point it is for a jury to determine whether Trooper Krol's testimony is credible.

Defendants also argue that, regardless of his expertise, Mr. Barnes's testimony is simply not believable because it would have been difficult or impossible for him to observe the narcotics search. Def. Reply *8. At the time of the search, Defendants claim that Mr. Barnes was in Trooper White's squad car, and that Mr. Barnes's car was between his vantage point and the backpack. *Id.* Defendants argue that accepting Mr. Barnes's testimony would require the Court to draw unreasonable inferences. *Id.* But Defendants have not shown that his testimony is *false*, or entirely based on speculation, which is what is required for the Court to discount it entirely. *See Lauth v. Covance, Inc.*, 155 F. Supp. 3d 855, 875 (S.D. Ind. 2016), *aff'd*, 863 F.3d 708 (7th Cir. 2017) (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir.2008)). As such, when drawing all reasonable inferences in the light most favorable to the non-moving party, Mr. Barnes's testimony that Trooper Krol ran around the car quickly and without stopping creates a genuine dispute as to whether Hades stopped, laid down, and alerted to the presence of narcotics. Ex. 7 at 34:11–20. Because Mr. Barnes's observations were not impossible, the question of whether to believe his testimony is a credibility determination reserved for the jury.

In sum, the Court agrees with Mr. Barnes. A genuine dispute of material fact exists as to whether any reasonable officer could possibly have believed that the pumice stone in Mr. Barnes's backpack was a rock of crack cocaine; and another genuine dispute of material fact exists as to whether Hades actually did alert to the presence of narcotics in Mr. Barnes's bag. The Court finds that a reasonable jury could determine no probable cause existed to arrest Mr. Barnes for possession of crack cocaine (or any other narcotic); indeed, a reasonable jury could even determine that probable cause

– 17 –

was flagrantly absent, such that no reasonable officer could possibly have believed the standard was satisfied.

### F. Summary

The Court finds that a genuine dispute of material fact exists for each of the six potential criminal violations identified by Defendants as to whether the totality of the circumstances created probable cause to arrest. A reasonable jury could rule that Troopers White and Krol lacked probable cause to arrest Mr. Barnes for any offense, which would make his detention unconstitutional. The Court therefore denies summary judgment with respect to Mr. Barnes's wrongful detention claim.

## II. Malicious Prosecution

In addition to his claim of wrongful detention, Mr. Barnes also brings a claim for malicious prosecution under § 1983. Under this claim, he argues that Troopers White and Krol "falsified reports" and "concealed exculpatory evidence." Dkt. 22 ¶ 30. The Supreme Court has recently recognized the existence of a Fourth Amendment claim for malicious prosecution. *Thompson v. Clark*, 596 U.S. 36 (2022). The Court defined the elements of the claim as follows: (1) the suit or proceeding was "instituted without any probable cause"; (2) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (3) the prosecution "terminated in the acquittal or discharge of the accused." *Id.* at 44.

Defendants argue that they are entitled to summary judgment on Mr. Barnes's malicious prosecution claim because there was "probable cause to arrest Plaintiff for suspected possession of cocaine," Def. Br. *11; and because Mr. Barnes has not shown that Troopers White and Krol were motivated by malice, *id.*; Def. Reply *2, 16–17. However, the Court has already found a genuine issue of material fact as to whether probable cause existed to arrest Mr. Barnes for possession of crack

cocaine. The Court's findings apply with the same force for the malicious prosecution claim. Additionally, because Mr. Barnes was only prosecuted for possession of narcotics, DSOF ¶ 29, that is the only probable cause determination that is material to the malicious prosecution claim. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). Thus, even if the Court was mistaken in any of its rulings above related to probable cause for Mr. Barnes's uncharged alleged crimes, *see supra* section I(A)–(D), that would not affect the Court's determination that a genuine dispute of material fact exists as to the existence of probable cause for the purposes of the malicious prosecution claim.

With respect to the "malice" element of malicious prosecution, the Supreme Court explained in *Thompson* that "the gravamen of the Fourth Amendment claim for malicious prosecution… is the wrongful initiation of charges without probable cause," which is itself "the gravamen of the tort of malicious prosecution." 596 U.S. at 43. As such, while the Court ruled that Fourth Amendment malicious prosecution requires "the absence of probable cause," the Court also explicitly declined to determine "whether a plaintiff… must [also] establish malice (or some other *mens rea*)." *Id.* at 44 n.3. Within this circuit, the Court of Appeals has followed the Supreme Court's lead in declining to determine whether a showing of malice is actually required. *See Neita v. City of Chicago*, 148 F.4th 916, 939 n.10 (7th Cir. 2025). For its own part, this Court has twice ruled, and once denied reconsideration of a ruling, that the "malice" element of Fourth Amendment malicious prosecution only requires establishing the absence of probable cause. *See Smith v. City of Chicago*, No. 23-CV-05121, 2024 WL 3757127, at *2 (N.D. Ill. Aug. 12, 2024) (Coleman, J.); *Garcia v. Clift*, No. 23-CV-11493, 2025 WL 1158514, at *3–4 (N.D. Ill. Apr. 21, 2025) (Coleman, J.); *Smith v. City of Chicago*, No. 23-CV-05121, dkt. 113 (N.D. Ill. Mar. 4, 2026) (Coleman, J.) (denying reconsideration of previously cited *Smith* order).

Defendants nevertheless argue that showing malice is a requirement of the cause of action that Mr. Barnes has failed to establish. They claim that, "If the only requirement for establishing malice were a lack of probable cause, then the probable cause element of a malicious prosecution claim would

effectively replace the malice element." Def. Reply *16–17. The Court acknowledges that it is counter-intuitive that proving "malicious prosecution" would not require a plaintiff to actually show malice. Nevertheless, such a showing is not required under the current precedent regarding Fourth Amendment malicious prosecution. Indeed, in the cases cited above, this Court twice found that malicious prosecution and wrongful detention (post-arrest) are essentially duplicative claims. *Garcia*, 2025 WL 1158514, at *3–4 ("Supreme Court precedent makes clear that… there is in fact no difference in the legal elements between the two claims under the Court's current jurisprudence."); *Smith*, 2024 WL 3757127, at *2 (similar); *see Neita*, 148 F.4th at 939 n.10.[13] Additional guidance from the Seventh Circuit on this point of law would be appreciated; but under current precedent, the Court rules that the genuine dispute as to probable cause to arrest Mr. Barnes for possession of crack cocaine also creates a genuine dispute as to whether Troopers White and Krol acted with malice while participating in Mr. Barnes's allegedly malicious prosecution.

Finally, Defendants argue in their reply brief that, as a matter of law, police officers are improper defendants for malicious prosecutions "because prosecutors, not police officers, prosecute cases." Def. Reply *15. This argument fails on multiple fronts. First, it likely constitutes a new argument not advanced in Defendant's original motion brief. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003). Second, it relies on and misstates the finding of *Evans v. Matson*, a case where the arresting officers did nothing improper. No. 23-2954, 2024 WL 2206638, at *3 (7th Cir. May 16, 2024). Here, a genuine dispute exists as to whether at least Trooper Krol falsified evidence, *see infra* section III, and there is also a genuine dispute as to whether probable cause to arrest

---

[13] Defendants have not argued that the malicious prosecution claim should be dismissed as duplicative of the wrongful detention claim, so the Court will not consider whether such dismissal is appropriate in this case. However, the Court observes in passing that Mr. Barnes's wrongful detention claim is premised primarily upon his allegedly wrongful arrest; in contrast, the wrongful detention claims that this Court has dismissed as duplicative have focused on wrongful detention while awaiting trial. *See Garcia*, 2025 WL 1158514, at *3–4 (finding wrongful pretrial detention claim, but not wrongful arrest claim, as duplicative of malicious prosecution claim); *Smith*, 2024 WL 3757127, at *2.

Mr. Barnes for possession of cocaine was flagrantly absent. As such, there is not the same absence of influence on Mr. Barnes's prosecution. As the Supreme Court has long recognized, "An arrest is the initial stage of a criminal prosecution." *Terry*, 392 U.S. at 88. The Court therefore rejects Defendants' argument that Troopers White and Krol are improper defendants simply because they are cops rather than prosecutors.

The Court finds that a reasonable jury could rule that Trooper White or Trooper Krol acted maliciously in their contribution to Mr. Barnes's prosecution without probable cause. The Court therefore denies summary judgment as to Mr. Barnes's malicious prosecution claim.

### III.    Trooper Krol's Involvement

Defendants argue that, regardless of whether probable cause existed for Trooper White to arrest Mr. Barnes, summary judgment should be granted in favor of Trooper Krol because he "was minimally involved in the underlying incident and had negligible interactions with Plaintiff." Def. Reply *17; *see also* DSOF ¶¶ 27, 35. Defendants suggest, incredibly, that Mr. Barnes only argues that Trooper Krol "assisted White in handcuffing Plaintiff and crafting the criminal complaint," and that this does not suffice to hold him liable. *Id.* Defendants portray Mr. Barnes's argument inaccurately; unsurprisingly, he also argues that Trooper Krol's involvement relates to the narcotics search, the alleged results of which appeared in the arrest report. Pl. Resp. *16–17; ex. 2. Defendants argue that Trooper Krol's involvement was essentially the same as that of the officer in *Ortiz v. City of Chicago*, whose "mere presence at the scene" did not establish his participation in an arrest. No. 09-CV-2636, 2010 WL 3833962, at *8 (N.D. Ill. Sept. 22, 2010)). But responding to a call of assistance from another officer and conducting a narcotics search is *far* more than "mere presence at the scene." As the Seventh Circuit has observed, participation in an arrest for § 1983 purposes requires that the defendant "caused or participated in an alleged constitutional deprivation," and therefore the defendant "must have undertaken some action prior to, or perhaps at the time of" the arrest. *Jenkins v. Keating*, 147 F.3d 577,

583–84 (7th Cir. 1998). Here, Defendants statement of facts establishes that Trooper White "placed Plaintiff under arrest" *after* Trooper Krol conducted his narcotics search, and at least partly based on the alleged results of that search. DSOF ¶¶ 22, 24. Any suggestion that Trooper Krol did not participate in the arrest is therefore flatly contradictory to the undisputed facts and binding legal precedent.

Trooper Krol's participation in the arrest is sufficient to establish that he participated in the prosecution. *Cf. Terry*, 392 U.S. at 26 ("An arrest is the initial stage of a criminal prosecution."). Additionally, the genuine disputes and undisputed facts could also reasonably support an inference that Trooper Krol lied about the results of his narcotics search. As noted above, there is a genuine dispute of material fact as to whether Hades the drug dog alerted to narcotics. But it is undisputed that Trooper Krol informed Trooper White that Hades had detected drugs, and that assertion made its way into Trooper White's arrest report. Ex. 2. There is also no evidence suggesting that there were hard drugs anywhere at the scene during the encounter between Mr. Barnes and the Troopers. No hard narcotics were found in Mr. Barnes's backpack; Hades had not been trained to alert to cannabis; and Mr. Barnes's observations are not consistent with Trooper Krol's testimony that Hades laid down in front of the backpack and stared at it. Given these facts and genuine disputes, a reasonable jury could conclude that Trooper Krol fabricated evidence that Hades had alerted to narcotics and withheld exculpatory evidence that Hades had not done so. If true, then Trooper Krol certainly acted to influence the prosecution. But, as noted above, Trooper Krol's active participation in Mr. Barnes's arrest is sufficient to find that he participated in Mr. Barnes's prosecution; he is therefore a proper defendant for both causes of action.

## IV. Qualified Immunity

Finally, Defendants argue that, even if summary judgment is not warranted as to the alleged constitutional violations, both Troopers are nevertheless entitled to qualified immunity. The

controversial (although well-established) doctrine of qualified immunity "shields government officials from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Manery v. Lee*, 124 F.4th 1073, 1079 (7th Cir. 2025). As one eminent jurist has noted, qualified immunity has evolved from a protection for public officials acting in good faith to become a doctrine that "now protects all officers, no matter how egregious their conduct, if the law they broke was not 'clearly established.'" *Jamison v. McClendon*, 476 F. Supp. 3d 386, 404 (S.D. Miss. 2020) (Reeves, J.).

There are two inquiries in determining whether qualified immunity applies: (1) "whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023). Accordingly, the standard for qualified immunity is not high. Defendants themselves quote the Supreme Court's pronouncement that the doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Nevertheless, the basic procedures of summary judgment are not abandoned. If the Court is to rule at this stage of the proceedings that Defendants are entitled to qualified immunity, then it must be because no reasonable jury could possibly rule otherwise, based on the undisputed material facts. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1014 (7th Cir. 2013). As always during summary judgment, the Court must determine the question of qualified immunity while "accepting the facts and inferences in the light most favorable to the" non-moving party. *Estate of Williams by Rose v. Cline*, 902 F.3d 643, 648–49 (7th Cir. 2018).

The right to be free from arrest without probable cause is quite well established. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citing *Baker v. McCollan*, 443 U.S. 137 (1979); *Gerstein v. Pugh*, 420 U.S. 103 (1975). However, that does not end the inquiry. In the context of alleged missing probable cause, courts consider qualified immunity by asking "whether a reasonable officer could have

mistakenly believed that probable cause existed." *Carmichael v. Village of Palatine*, 605 F.3d 451, 459 (7th Cir.2010). Such "arguable" probable cause is established when "a reasonable police officer in the same circumstances and… possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Fleming v. Livingston County, Illinois*, 674 F.3d 874, 878 (7th Cir. 2012).

At this stage of the proceedings, based on the record before it, the Court believes that a reasonable jury could find that qualified immunity does not apply in this case. This is easily established in the case of Trooper Krol, for whom there is a genuine dispute of material fact as to whether he lied about the results of the narcotics search. Even the broadest application of qualified immunity will not shield an officer who falsifies evidence. *Rainsberger v. Benner*, 913 F.3d 640, 653 (7th Cir. 2019); *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (citing *United States v. Leon*, 468 U.S. 926 (1984)). For Trooper White, it is a closer question. However, the undisputed evidence supporting probable cause to arrest Mr. Barnes for possession of crack cocaine is so scanty that a jury could plausibly find that absolutely no reasonable officer could have believed that probable cause existed under these circumstances. *See Cuevas v. City of Aurora*, No. 22 CV 3893, 2025 WL 1899513, at *5 (N.D. Ill. July 9, 2025) (Shah, J.) ("If the disputed facts were resolved in [plaintiff's] favor," qualified immunity would not apply because "no reasonable officer could have believed" probable cause was even arguably present) (citing *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009)).

As noted above, qualified immunity is a low bar, and a reasonable jury could easily decide that it applies in this situation. But a reasonable jury could also decide otherwise. For summary judgment purposes, that is the end of the inquiry.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment [79].

– 25 –

**IT IS SO ORDERED.**

Date: 3/31/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge